Tom Mars, Director Arkansas State Police #1 State Police Plaza Drive Little Rock, AR 72209
Dear Colonel Mars:
I am writing in response to your request that I reconsider my opinion in the attached Ark. Op. Att'y Gen. No. 2000-083, in which I concluded thatAct 1558 of 1999 (the Act), codified at A.C.A. § 12-12-324, dictates that all weapons that come into the custody of any law enforcement agency be delivered to the State Crime Laboratory for ballistics testing.
RESPONSE
Having reviewed the materials you provided in support of your request, I have concluded that Act 1558 is unclear in its meaning and could support the interpretation that police need only submit for ballistics testing weapons they reasonably suspect have been used in criminal activity.
As noted in my previous opinion, the Act reads as follows:
 "AN ACT TO DEVELOP A DATABASE FOR TRACING FIREARMS USED IN THE COMMISSION OF CRIME; AND FOR OTHER PURPOSES."
BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
 SECTION 1. (a) All firearms which come into the custody of any law enforcement agency in this state shall be delivered to the State Crime Laboratory within thirty (30) calendar days for ballistics testing. However, if the firearm is being used as evidence in a criminal case, then delivery shall take place within thirty (30) calendar days after the final adjudication of the criminal proceeding. If it would place an unreasonable burden on the law enforcement agency to transport the firearm to the State Crime Laboratory the person responsible for delivery may contact the Department of Arkansas State Police and the department will, if possible, accomplish delivery to the State Crime laboratory.
You have provided with your request for reconsideration the attached legal memorandum from your Chief Legal Officer, who concludes that the Act requires testing of only those weapons the police consider to have been used in the commission of crimes. You have further provided me a letter from the Act's sponsor, Senator Jay Bradford, confirming your Chief Legal Officer's interpretation of the Act.
At the time I rendered my original opinion, I did not have the benefit of these materials, which clarify what was intended, if not necessarily what was clearly expressed, in the Act. The conclusion drawn in the attached legal memorandum is based on the premise that any statute should be construed to effect the intention of the General Assembly. St. Paul Fire Marine Insurance v. Griffin Construction Co., 338 Ark. 289,993 S.W.2d 485 (1999). The memorandum concludes that the Act's intention is reflected in its title, which references "firearms used in the commission of crime." In my previous opinion, I interpreted this title as stating the purpose of the testing — namely, to identify weapons used in crimes — not as restricting testing to weapons that police officers conclude have been used in crimes. As reflected in the memorandum, apparently most Arkansas law enforcement officers and the Director of the Arkansas State Crime Laboratory agree with my previous reading of the Act and are routinely presenting for ballistics testing all firearms in their custody. However, Senator Bradford, who sponsored the legislation, has clearly stated that he agrees with your Chief Legal Officer's conclusion that the Act applies only to those firearms the police reasonably believe have been used in the commission of crimes. As the Supreme Court noted inMountain Home School District v. T.M.J. Builders, 313 Ark. 661,858 S.W.2d 74 (1993), the basic rule of statutory construction is to give effect to the intent of the legislature. Accordingly, Senator Bradford's declaration is sufficient to make me reconsider my previous interpretation of the legislation's title. Although the title itself is not part of an act, it may be used to construe the language thereof where an ambiguity exists. Quinney v. Pittman, 320 Ark. 177, 895 S.W.2d 538
(1995). In the present case, I believe the inclusion in the title of the phrase "firearms used in the commission of a crime," considered in conjunction with Senator Bradford's declaration regarding the intention of the Act, might reasonably be interpreted as creating an ambiguity in the statutory language "[a]ll firearms which come into the custody of any law enforcement agency." I believe reasonable minds might differ on the meaning of the legislation. As such, given Senator Bradford's letter affirming legislative intent, I would not consider it necessarily contrary to the Act if you directed your officers to submit for ballistics testing only those weapons they reasonably concluded had been used in the commission of crimes.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosures